UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBIN N.,[1]

Plaintiff,

v.

MARTIN O'MALLEY,[2]

Defendant.

Case No.:  3:23-cv-00758-LL-VET

**REPORT AND RECOMMENDATION ON JOINT MOTION**

**[Doc. No. 14]**

This Report and Recommendation is submitted to United States District Judge Linda Lopez pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1.c.

I. **INTRODUCTION**

On April 25, 2023, Plaintiff Robin N. filed a complaint challenging Defendant Commissioner's ("Commissioner" or "Agency") denial of her application for disability insurance benefits and supplemental security income. Doc. No. 1. Before the Court is the parties' Joint Motion for resolution of the following issue: whether substantial evidence supports the Agency's conclusion that Plaintiff can perform work that exists in significant

---

[1]  Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).

[2]  Martin O'Malley, Commissioner of the Social Security Administration, is automatically substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

1

numbers in the national economy. Doc. No. 14 at 5. Having considered the parties' arguments, applicable law, and the record before it, and for the reasons discussed below, the undersigned **RECOMMENDS AFFIRMING** the Commissioner's decision.

## II.    BACKGROUND

### A.    Procedural History

Pursuant to the Social Security Act ("Act"), Plaintiff applied for disability insurance benefits and supplemental security income on July 11, 2016, alleging disability commencing on November 6, 2015. AR 339–346. The Agency denied the application initially and on reconsideration. AR 269–274, 277–283. Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"), and on August 28, 2018, ALJ Andrew Verne held a hearing. AR 54–91. On December 5, 2018, ALJ Verne found that Plaintiff was not disabled. AR 37–53. The Appeals Council declined review, and following a complaint for judicial review, this Court reversed the ALJ decision and remanded the matter for further proceedings. AR 16–21, 803–809.

On remand, ALJ Verne conducted another hearing on December 15, 2022 and issued an unfavorable decision on February 8, 2023. AR 734–766, 710–733. ALJ Verne concluded that Plaintiff was not disabled within the meaning of the Act. AR 711. On April 25, 2023, Plaintiff initiated this action seeking judicial review of ALJ Verne's February 2023 decision. Doc. No. 1. The parties filed the Joint Motion on October 17, 2023. Doc. No. 14.

### B.    Summary of The ALJ's February 2023 Decision

ALJ Verne followed the Agency's five-step sequential evaluation process to determine whether Plaintiff is disabled. *See* 20 C.F.R. § 404.1520(a)(4). At step one, ALJ Verne determined that Plaintiff had "not engaged in substantial gainful activity since November 6, 2015," the alleged onset date. AR 714. At step two, ALJ Verne found that Plaintiff had the following severe impairments: gastrointestinal issue, fibromyalgia, and bipolar disorder. *Id.* At step three, ALJ Verne concluded that Plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to those

3:23-cv-00758-LL-VET

in the Commissioner's Listing of Impairments. AR 715. Before proceeding to step four, ALJ Verne further determined that Plaintiff's impairment left her with the residual functional capacity ("RFC") to perform medium work with certain limitations. AR 717. Those limitations included standing or walking for no more than six hours in an eight-hour workday. *Id.* At step four, ALJ Verne found Plaintiff was unable to perform past relevant work. AR 720.

At step five, relying on the testimony of a vocational expert ("VE"), ALJ Verne concluded that Plaintiff could perform other work existing in significant numbers in the national economy. AR 721. Specifically, the VE identified three representative occupations that an individual with Plaintiff's age, education, work experience, and RFC could perform: (i) store laborer in the Dictionary of Occupational Titles ("DOT") at 922.687-058, (ii) hand packager in the DOT at 920.587-018, and (iii) airport maintenance in the DOT at 899.687-014. AR 756–757. In his final decision, ALJ Verne identified only hand packager and airport maintenance as representative occupations. AR 721.

In response to questioning, the VE confirmed that based on his experience, the representative occupations would require standing for no more than six hours. AR 759–760. Relying on Occupational Requirements Survey ("ORS") data from the Bureau of Labor Statistics ("BLS"), Plaintiff's representative challenged the VE's testimony, both at the time of hearing and in a post-hearing brief. *See generally* AR 759–763, 968–999. After confirming that the store laborer and hand packager occupations "sort" into particular "Standard Occupational Classification" ("SOC") codes used by BLS, Plaintiff's representative cited ORS data to suggest that the representative occupations required that workers stand for longer than six hours, with little to no sitting time within certain percentiles. AR 760–763. While agreeing that data published by BLS is reliable in "most cases," the VE testified that the ORS data did not change his testimony. AR 760, 763. The VE explained that such data represented only one viewpoint, and he was relying on data from multiple sources and meshing that data together with his background and experience, including review of job analysis data for the representative occupations. AR 761–762.

3

3:23-cv-00758-LL-VET

After considering the totality of the record, ALJ Verne overruled Plaintiff's objection to the VE testimony, and based on that testimony, concluded that Plaintiff was not disabled as she could make a successful adjustment to other work that exists in significant numbers in the national economy. AR 722.

### III.   STANDARD OF REVIEW

A court may set aside the Social Security Administration's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotations omitted). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Id.* at 1159 (internal quotations omitted) (quoting *Biestek*, 587 U.S. at 103).

Lastly, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (internal quotations omitted).

### IV.   DISCUSSION

The issue presented by Plaintiff is whether substantial evidence supports the ALJ's conclusion at step five, and specifically whether the ALJ properly addressed an alleged conflict between the VE's testimony and the ORS data introduced by Plaintiff. Doc. No. 14 at 5, 11.

3:23-cv-00758-LL-VET

Claiming that the ORS data is relevant and reliable, and noting that the Commissioner plans to replace the DOT with a new Occupational Information System using ORS data to determine work requirements, Plaintiff argues that the ALJ committed error by rejecting the ORS data without explanation. *See id.* at 5–14. Specifically, Plaintiff relies on ORS data for SOC groups 51-9198 (helper-production workers) and 53-7064 (packers and packagers, hand) to argue that the "jobs identified by the VE sit for 0.8 hours *at most*." *Id.* at 9 (emphasis in original). Thus, Plaintiff concludes that the ORS data "conflicts with the VE's testimony that the jobs identified can be performed sitting for two hours a day," and contends that "*overruling* the [ORS data] evidence does not resolve the conflict presented." *Id.* at 11 (emphasis in original).

For the reasons discussed below, the ORS data, as presented here, is not significant and probative evidence and therefore did not create an inconsistency in the evidence that the ALJ was required to resolve. Furthermore, substantial evidence supports the ALJ's conclusion at step five.

**A.      The ORS Data, as Presented by Plaintiff, is Not Probative and Significant Evidence**

An ALJ has "a general duty to resolve inconsistencies in the evidence, which may require obtaining additional evidence." *See Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023); *see also* 20 C.F.R. § 404.1520b(b) (identifying steps the agency may take when evidence in the record is "inconsistent"); 20 C.F.R. § 416.920b(b) (same). "This duty applies throughout the five-step evaluation." *Wischmann*, 68 F.4th at 504–505 (quoting *Ford*, 950 F.3d at 1149) (internal quotations omitted). When considering evidence that conflicts with the VE's testimony, "the ALJ *may* have a duty to address such a conflict." *Id.* at 505 (emphasis added). "That duty arises only where the purportedly inconsistent evidence is both significant and probative, as opposed to meritless or immaterial." *Id.* To determine whether such a duty exists, the Court considers on a case-by-case basis whether the purportedly contrary evidence is probative and significant. *Id.* at 507.

3:23-cv-00758-LL-VET

Per Plaintiff, the ORS provides job related information concerning the physical demands of jobs in the U.S. economy, including sitting and standing requirements. Doc. No. 14 at 6. "BLS publishes ORS data using the [SOC] system to classify the data." *Id.* at 8. During the hearing, Plaintiff's representative confirmed that the DOT occupations identified by the VE using DOT codes "sort" into two SOC groups, codes 51-9198 and 53-7064 respectively. *Id.* However, as noted by the Ninth Circuit, SOC occupation codes are different than DOT occupation codes because the "SOC system groups together detailed occupations with similar job duties in a single code, such that a single SOC group may contain multiple DOT occupations." *Wischmann*, 68 F.4th at 502. "As a result, employment data corresponding to a single SOC occupation code does not correspond to a single DOT occupation code." *Id.*

Nevertheless, Plaintiff contends that the sitting/standing requirements reflected for SOC codes 51-9198 and 53-7064 conflict with the VE's conclusion that the representative DOT occupations can be performed sitting for two hours a day. Doc. No. 14 at 11. In support of this contention, Plaintiff offers printouts from the "BLS Data Viewer" and "Occu Collect," both with references to ORS data, coupled with arguments and assertions by Plaintiff's counsel concerning what the ORS data represents. *Id.* at 8–9; *see also* AR 973–999. The BLS Data Viewer printouts do not identify any SOC code but include data regarding sitting and/or standing demands for "all workers" that make up two occupation groups: "helpers-production workers" and "packers and packagers, hand." AR 973–980; 987–993. In turn, the Occu Collect printouts are titled "Physical Demands Report" for "51-9198 – Helpers -- production workers" and "53-7064 – Packers and packagers, hand." AR 981–986; 994–999. The Occu Collect reports seemingly identify sitting and standing information for SOC codes 51-9198 and 53-7064 and refer to "2022 Dataset Occupational Requirements Survey." *Id.*

Plaintiff provides no information concerning what queries were used in the relevant databases to generate the data reflected in the printouts; what filters, if any, were used; or who ran the queries to generate the data presented. Nor is any information provided

6

3:23-cv-00758-LL-VET

regarding what "Occu Collect" represents. And while Plaintiff notes plans by the Commissioner to adopt ORS data as the primary source of information for a new Occupational Information System that will replace the DOT, there is no evidence that has yet occurred. *See* Doc. No. 14 at 7. Nor does Plaintiff point to any requirement that the ALJ or VE must consider the ORS data.

Also absent in both the Joint Motion and Plaintiff's post-hearing brief is any analysis or explanation showing that the sitting/standing demands for the referenced SOC codes (*i.e.*, the "helpers-production workers" and "packers and packagers, hand" groups) *match* the specific DOT occupation codes identified by the VE, and thus reflect actual sitting/standing demands for each DOT occupation. *See Wischmann*, 68 F.4th at 502 (explaining how the lack of correspondence between DOT occupation codes and SOC employment data requires a VE to determine, for example, how many jobs available for an SOC code match a claimant's specific DOT code or codes). Nor is any interpretation or explanation provided concerning the referenced SOC codes, what they include, and/or how their associated employment data is generally used vis-à-vis specific DOT codes.

In fact, the record reflects only that the relevant DOT occupation codes "sort" into the SOC codes referenced by Plaintiff, but as indicated above, an SOC code does not correspond to a single DOT code. This incongruity is especially evident with respect to SOC code 51-9198, which Plaintiff admits includes both store laborer and airport maintenance jobs. Doc. No. 14 at 8. The ALJ found Plaintiff could perform work in airport maintenance but did not make such a finding as to store laborer. *Id.* at 5. As such, it is not evident why the sitting/standing demands for SOC code 51-9198 are inconsistent with the conclusion that Plaintiff can perform airport maintenance when 51-9198 encompasses occupations beyond airport maintenance. Given that Plaintiff is comparing apples to oranges, more is required than counsel's bare assertions to "give rise to the sort of inconsistency in the evidence that an ALJ is required to resolve." *Wischmann*, 68 F.4th at 507; *see also Ronald W.W. v. O'Malley*, No. 5:22-cv-02019, 2024 U.S. Dist. LEXIS 28965, at *22 (C.D. Cal. Feb. 20, 2024) (rejecting alternative job numbers as probative rebuttal

3:23-cv-00758-LL-VET

evidence because plaintiff's counsel did not use the same methodology or possess the same level of expertise in interpreting job numbers as the VE).

Moreover, there is no evidence demonstrating that the arguments advanced by Plaintiff represent opinions or analyses performed by a VE. And despite his assertions, Plaintiff's counsel identifies no special expertise in interpreting ORS employment data for the referenced SOC groups and, more importantly, extrapolating this data to specific DOT occupation codes. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022) (rejecting competing job numbers presented by plaintiff's attorney, in part, because attorney "had no identified expertise in calculating job figures in the national economy"). Under these circumstances, the relevance of the ORS data as presented by counsel through printouts and argument is not meaningful to the Court.

Notably, the ORS data, as presented here, is similar to other evidence rejected by the Ninth Circuit. For example, in *Wischmann*, the plaintiff submitted a letter by plaintiff's counsel with six pages of printouts to rebut the available job numbers presented by the VE. *Wischmann*, 68 F.4th at 507–508. The Ninth Circuit found that the letter and printouts provided no basis to conclude that the results qualified as significant probative evidence. *Id.* at 506. The court reasoned that it was unclear if an attorney or VE conducted the analysis, the methodology was not comparable to that of the VE, and the methodology was otherwise not comprehensible to a lay person. *Id.* at 506–507; *see also Daniela P. v. Comm'r*, No. 23-cv-00707, 2024 U.S. Dist. LEXIS 80238, at *7–9 (D. Or. May 1, 2024) (rejecting rebuttal evidence for same reasons).

Similarly, in *Kilpatrick*, the Court rejected competing job numbers supplied by plaintiff's counsel. *Kilpatrick*, 35 F.4th at 1194. Like here, the attorney's methodology involved using two different groups of data that are not "directly correlated"— Occupational Employment Statistics ("OES") data published by the Department of Labor and DOT codes—and drawing assumptions about what that data showed. *Id.* at 1191, 1194 (noting that the methodology requires the "improbable assumption" that jobs within the same OES all had the exact same number of full-time jobs). In concluding that the

competing job numbers were not significant probative evidence, the court explained that the plaintiff's attorney "did not replicate the VE's same methodology," the attorney had no expertise in calculating job figures in the national economy, and thus the ALJ was not required to address the results. *Id.* at 1194.

Here, like in *Wischmann* and *Kilpatrick*, Plaintiff presents printouts and analysis by Plaintiff's counsel. In turn, Plaintiff's counsel draws conclusions about the physical demands of specific DOT occupations by comparing two sets of data that are not directly correlated. And he does so in the absence of any demonstrated expertise in interpreting ORS data, including SOC codes, or the physical demands of the representative occupations. As such, like in *Wischmann* and *Kilpatrick*, there is no basis to conclude that the ORS data, as presented here, constitutes significant and probative evidence. *Wischmann*, 68 F.4th at 507 ("And because an ALJ need not discuss evidence from a lay witness that the lay witness is not competent to provide, the uninterpreted data is not probative.") (internal quotations omitted).

Furthermore, Plaintiff's reliance on *Orozco v. Kijakazi*, No. 21-56263, 2022 U.S. App. LEXIS 35416 (9th Cir. Dec. 22, 2022), is misplaced. Doc. No. 14 at 11. First, the *Orozco* court did not remand solely due to a conflict between ORS data and VE testimony. The ALJ in *Orozco* erred by relying on VE testimony without reconciling a conflict between the DOT and VE testimony. *Orozco*, 2022 U.S. App. LEXIS 35416, at *2–3. Unlike ORS data, "an ALJ is required to investigate and resolve an apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2022). Second, and more importantly, the *Orozco* court did not analyze the ORS data under the standard *subsequently* articulated in *Wischmann*. *See Orozco*, 2022 U.S. App. LEXIS 35416, at *3. Specifically, the *Wischmann* court confirms that an ALJ has a duty to resolve a conflict "only where the purportedly inconsistent evidence is both significant and probative." *Wischmann*, 68 F.4th at 505; *see also Orozco*, 2022 U.S. App. LEXIS 35416, at *3 (concluding that a conflict existed without analyzing whether the ORS data was

9

significant or probative). The *Wischmann* standard is controlling, and under this standard, for the reasons already discussed, the ALJ here was not required to address the ORS data.

In short, printouts with ORS data, coupled with an attorney's lay interpretation of that data, without more, is not significant and probative rebuttal evidence. *See, e.g.*, *Karol B. v. Acting Comm'r of Soc. Sec.*, No. 22-cv-01593, 2023 U.S. Dist. LEXIS 150343, at *9–11 (W.D. Wash. Aug. 25, 2023) (finding that three O*NET Online webpages and 23 pages of ORS data did not constitute probative evidence that warranted remand where plaintiff's counsel did not use the same methodology as the VE, made no effort to explain the data and values, and did not show he possessed the requisite expertise to interpret the number and types of jobs available in the national economy).

Lastly, the Court finds that the ALJ did consider and evaluate the ORS data in reaching his decision at step five, including acknowledging that he "must weigh the opinion of a [VE] along with the other evidence of record." Doc. No. 14 at 12; AR 722. And in his analysis, the ALJ does just that. The ALJ expressly discusses Plaintiff's challenge to the VE's methodology using the ORS data, including the questioning by Plaintiff's representative at the hearing and the post-hearing brief. AR 721–722. The ALJ's description of the challenge, including discussion of the VE's testimony in response to that challenge, shows he took into account the ORS data, but ultimately rejected it. And, more importantly, he explained why he accepted the VE's testimony. The ALJ found that the VE had professional knowledge and experience in job placement, that his testimony was consistent with the information in the DOT, and "based on careful consideration of the totality of the record," the VE's testimony conformed to the Agency's rules and regulations. AR 722.

While the ALJ could have been more explicit about his reasons for rejecting the ORS data, to the extent that constitutes error, the error was harmless. As articulated above, the ALJ provided a clear statement that set forth his reasons for accepting the VE's testimony. Any failure to provide further explanation is inconsequential as it would not alter the outcome of the case where it is evident why the ALJ accepted the VE testimony, after

3:23-cv-00758-LL-VET

considering the ORS data. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014) (error is harmless "if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity").

In sum, the Court finds that the ORS data, as presented here, does not constitute probative and significant rebuttal evidence, and therefore did not raise an inconsistency that the ALJ was required to resolve. Nevertheless, the ALJ did consider the ORS data, rejected it, and explained why he adopted the VE testimony.

## B. Substantial Evidence Supports the ALJ's Conclusion at Step Five

The Court further concludes that substantial evidence supports the ALJ's conclusion at step five, which was based on the VE's testimony.

At step five, the ALJ decides whether a person with the claimant's limitations, age, education, and experience can perform work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(1). A VE frequently assists the ALJ with that determination. Given their specialized knowledge, the Agency "recognizes VEs as reliable sources of occupational information in the evaluation of disability claims." *Kilpatrick*, 35 F.4th at 1192. Thus, Agency regulations provide that "an ALJ is entitled to rely on a VE's testimony to support a finding that a claimant can perform occupations that exist in significant numbers in the national economy." *Id.* And although not "incontestable," a qualified VE's testimony is inherently reliable and sufficient by itself to support step five findings. *Id.*; *see also Ford*, 950 F.3d at 1159 (when the VE is "qualified and presents cogent testimony that does not conflict with other evidence in the record, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold . . .") (quoting *Biestek*, 587 U.S. at 108). Further, VE testimony can qualify as substantial evidence even when unaccompanied by supporting data. *Biestek*, 587 U.S. at 105–106.

Here, the VE was qualified, and indeed Plaintiff did not object to his qualifications. AR 755. The VE identified three occupations that Plaintiff could perform, two of which the ALJ identified in support of his step five findings. AR 757, 721. The VE's testimony was based on his background and experience for the last 25 years in performing job

11

analyses. AR 761. In addition, he reviewed job analysis data from the years in which data was available for the relevant positions and correlated that to BLS "information."[3] AR 762. He also applied a twenty-five percent erosion factor to the number of available jobs. *Id.* In response to questioning regarding the ORS data, the VE testified that it was only one data point that did not change his testimony, and he arrived at his numbers based on multiple sources and his experience. AR 761–763. The VE also confirmed that his testimony did not conflict with the DOT. AR 759.

The Court finds that the VE's testimony meets the substantial evidence standard and is sufficient to support the ALJ's step five findings.

## V.   CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED** and judgment be entered in the Commissioner's favor.

**IT IS HEREBY ORDERED** that any written objection to this Report and Recommendation must be filed and served on all parties no later than **July 29, 2024**. The pleading should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 8, 2024**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  July 19, 2024

Honorable Valerie E. Torres
United States Magistrate Judge

---

[3]   The VE did not specify what BLS "information" he relied on, and the record does not reflect that he was asked to specify.

12

3:23-cv-00758-LL-VET